**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF**
**AMERICA,**

                    **Plaintiff,**

           **v.**

**$16,072.00 IN U.S. CURRENCY**
**et al.,**

                    **Defendants.**
_____

           **1:17-cv-308**
           **(GLS/DJS)**

<u>**SUMMARY ORDER**</u>[1]

On May 2, 2013, after a lengthy investigation into a large narcotics trafficking operation in the Berkshires, the Rensselaer County Drug Task Force seized $296,172.00 and a 2008 Ford Expedition (hereinafter "SUV") from claimant Joshua G. Stegemann's premises pursuant to a New York search warrant.[2] (Am. Compl., Dkt. No. 32 ¶¶ 2-3, 5, 12, 24, 27; Dkt. No.

_____

    [1] The court assumes the parties' familiarity with the facts of this case and recites only those relevant for purposes of the instant motion.

    [2] $296,172.00 represents the total amount seized on May 2, 2013, which was collected from various locations inside Stegemann's house and the surrounding landscape. (Am. Compl. ¶¶ 2-3, 27, 29.) Although the government's brief asserts that $296,142.00 was seized on April 30, 2013, (Dkt. No. 44 at 4), the court relies on the date and amounts in the amended complaint.

44, Attach. 1.) A few days later, the Berkshire County Drug Task Force seized $160,020.00 inside a safe at Stegemann's sister's residence pursuant to a Massachusetts search warrant. (Am. Compl. ¶¶ 4, 31[3]; Dkt. No. 44, Attachs. 2, 4.) Thereafter, the government obtained *ex parte* turnover orders[4] from the respective state courts, which authorized a transfer of the seized property identified above (hereinafter "the defendant property") to the Drug Enforcement Administration (DEA) for the commencement of administrative forfeiture proceedings, "upon probable cause to believe that it was used to facilitate a violation of a drug offense or represents drug proceeds." (Dkt. No. 44, Attachs. 3, 4.) Following execution of the turnover orders, the DEA served administrative forfeiture notice upon Stegemann; in turn, Stegemann filed claims for the defendant property.[5] (Am. Compl. ¶¶ 35-36.)

─────────────────

[3] Although the narrative section of the amended complaint *in rem* identifies the amount seized as "$160,000.00," (Am. Compl. ¶ 31), this appears to be a scrivener's error, (*id.* ¶ 4; Dkt. No. 44, Attach. 4).

[4] The government notes that it has been unable to obtain the turnover order pertaining to the SUV, but represents that a turnover order was obtained and is listed as "on file" in their asset tracking system. (Dkt. No. 44 at 5 n.4 (citing Attach. 5).)

[5] In its brief, the government confusingly asserts that Stegemann's claim for the $160,020.00 seized from the safe at his sister's residence

On September 18, 2013, a grand jury indicted Stegemann, charging him with violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances), 18 U.S.C. § 924(c)(1)(A) (possession of firearms in furtherance of a drug trafficking crime), and 18 U.S.C. § 922(g)(1) (possession of firearms and ammunition by a prohibited person). (Dkt. No. 10, 1:13-cr-357 at 1-2.) The indictment also included a forfeiture allegation naming the defendant property, pursuant to 21 U.S.C. § 853(a), as proceeds from and property used or intended to be used to commit or facilitate violations of 21 U.S.C. § 841(a)(1). (*Id.* at 3-6.) After lengthy motion practice[6] and a trial, a jury convicted Stegemann on all counts, (Dkt. No. 150, 1:13-cr-357), and determined that the defendant property was subject to forfeiture, (Dkt. No. 151, 1:13-cr-357). Thereafter, the court ordered forfeiture of the defendant property. (Dkt. No. 208,

---

was deficient. (Dkt. No. 44 at 8-9.) However, court documents indicate that any deficiencies with Stegemann's initial claim for this sum, (Dkt. No. 27, Attach. 3 at 27-28), were remedied when he filed a timely claim for the same on September 3, 2013, (*id.* at 2). The amended complaint also seems to support this notion. (Am. Compl. ¶ 36.)

[6] It should be noted that although Stegemann filed a post-trial motion seeking return of property pursuant to Fed. R. Crim. P. 41(g), he did not raise the issue of whether the government properly maintained custody of the defendant property during the pendency of the criminal proceedings. (*See generally* Dkt. No. 164, 1:13-cr-357.)

1:13-cr-357.)

However, on appeal to the Second Circuit, the government conceded that it failed to demonstrate the requisite nexus between the defendant property and the criminal activity outlined in 21 U.S.C. § 841(a)(1) because, in its opinion, "the evidence at trial proved only that the cash was likely the proceeds of prior drug transactions and that the [SUV] was the instrumentality of prior drug transactions." (*United States of America v. Stegemann*, Case No. 16-2596, Dkt. No. 75 at 60-62.) On the same day as the government's concession, it filed this civil forfeiture proceeding alleging that the defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(4) and (6). (Compl. ¶¶ 9-10, Dkt. No. 1.) Eventually, the Second Circuit reversed the order of forfeiture as to the defendant property, based on the government's lack of opposition. (Dkt. No. 223, 1:13-cr-357.)

Stegemann then sought dismissal of the government's complaint *in rem* as well as various other forms of relief, (Dkt. No. 10), which the court denied, (Dkt. No. 31). At the time, the court noted that "the government has thus far failed to convince the court that it took the proper steps to maintain custody of the [defendant] property or that [18 U.S.C.]

4

§ 983(a)(3)(B)(ii)(II) is not implicated," but it stopped short of fully addressing the argument because it was improperly raised in Stegemann's reply papers.  (*Id.* at 4 n.2.)  Thereafter, the government filed an amended complaint, (Am. Compl., Dkt. No. 32), which was followed by Stegemann's pending motion to dismiss pursuant to Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Fed. R. Civ. P. 12(b)(6), (Dkt. No. 33).[7]  Stegemann argues that, like the initial complaint *in rem*, the amended complaint *in rem* must be dismissed because the government failed to satisfy the requirements of 18 U.S.C.

_____

[7] Although neither party addresses the applicable standard at this stage, it should be noted that Supp. Rule G(2) lays out the general requirements that a complaint *in rem* must satisfy, and Supp. Rule G(5)(b) and (8)(b) allow a claimant to move to dismiss such a complaint under Fed. R. Civ. P. 12.  Supp. Rule G also makes clear that, to the extent that the rule does not address an issue, the Federal Rules of Civil Procedure apply.  *See* Supp. Rule G(1).  Accordingly, for purposes of Stegemann's motion to dismiss, the court accepts the facts alleged in the *in rem* complaint as true and construes all reasonable inferences in the government's favor.  *See Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).  The court also considers exhibits attached to the complaint, materials incorporated by reference, documents that are integral to the complaint, and documents of which judicial notice may be taken.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

§ 983(a)(3)(B)(ii)(II).[8]  (*Id.*, Attach. 1 at 9-13.)  For the following reasons,

Stegemann's motion is denied with leave to renew in part.

The general rules regarding civil forfeiture proceedings are outlined

by Section 2 of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA),

P.L.106-185, 114 Stat. 202 (2000), which is codified at 18 U.S.C.

§ 983(a)(3) and states, in pertinent part:

> (A) Not later than 90 days after a claim has been filed, the [g]overnment shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.
>
> (B)    If the [g]overnment does not—
>
>> (i) file a complaint for forfeiture or return the property, in accordance with subparagraph (A); or
>>
>> (ii) **before the time for filing a complaint has expired**—
>>
>>> (I) obtain a criminal indictment containing an allegation that the property is subject to forfeiture; **and**

---

[8] The remainder of Stegemann's arguments, (Dkt. No. 33, Attach. 1 at 14-21), are denied for the reasons articulated by the government, (Dkt. No. 44 at 13-21), which Stegemann does not address in his reply, (*see generally* Dkt. No. 48).

> > (II) **take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute**,
>
> > the **[g]overnment shall promptly release the property** pursuant to regulations promulgated by the Attorney General, **and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense**.
>
> > (C) In lieu of, or in addition to, filing a civil forfeiture complaint, the [g]overnment may include a forfeiture allegation in a criminal indictment. If criminal forfeiture is the only forfeiture proceeding commenced by the [g]overnment, the [g]overnment's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute.

(internal marks altered and emphases added). Given that the government retained the defendant property and did not file a civil forfeiture complaint within ninety days of Stegemann's claims, it was required to satisfy the mandates of 18 U.S.C. § 983(a)(3)(B) in order to preserve its ability to later seek civil forfeiture of the same. *See* 18 U.S.C. § 983(a)(3)(A),(B). The court has already decided that the government satisfied § 983(a)(3)(B)(ii)(I) by indicting Stegemann and naming the defendant property in the indictment. (Dkt. No. 31 at 4.)

The only issue now before the court is whether the government "t[ook] the steps necessary to preserve its right to maintain custody of the

[defendant] property as provided in [21 U.S.C. § 853],"[9] as required by

§ 983(a)(3)(B)(ii)(II).  If not, CAFRA mandates the prompt release of the

defendant property and bars the government from taking any further action

to effect its civil forfeiture in connection with the underlying offense.  *See*

§ 983(a)(3)(B)(ii)(II); *see also* Stefan D. Cassella, The Civil Asset Forfeiture

Reform Act of 2000: Expanded Government Forfeiture Authority and Strict

Deadlines Imposed on All Parties, 27 J. Legis. 97, 146 (2001) ("[I]n those

cases where an indictment is obtained within the ninety-day period, the

government must remember that to protect itself from the 'death penalty'

for civil forfeiture, it must re-seize or restrain the property with criminal

process.") (internal footnote omitted).

Although case law addressing this niche area of CAFRA is not well

developed, courts have indicated that, generally, the government can

comply with 18 U.S.C. § 983(a)(3)(B)(ii)(II) by obtaining a protective order

under 21 U.S.C. § 853(e) or—if the government demonstrates that a

protective order is insufficient to assure the property's availability for

---

[9] Here, "the applicable criminal forfeiture statute" referenced in 18 U.S.C. § 983(a)(3)(B)(ii)(II) is 21 U.S.C. § 853 because that is the statutory basis for criminal forfeiture identified in Stegemann's indictment. (Dkt. No. 10, 1:13-cr-357.)

forfeiture—a criminal seizure warrant under 21 U.S.C. § 853(f).  *See, e.g.*, *United States v. Kramer*, No. 1:06-cr-200, 2006 WL 3545026, at *2-4 (E.D.N.Y. Dec. 8, 2006) (granting motion for return of property initially seized pursuant to civil seizure warrant and later included in criminal indictment within ninety days of defendant's claim where government had custody of the property but failed to take steps to obtain criminal seizure warrant or otherwise perfect its custody); *United States v. Martin*, 460 F. Supp. 2d 669, 675-76 (D. Md. 2006) (holding government barred from effecting civil forfeiture of property initially seized pursuant to the civil forfeiture statute where it failed to obtain criminal seizure warrants until defendant filed motion seeking return of property in the criminal proceeding); *see also United States v. Dupree*, 781 F. Supp. 2d 115, 131 n.9, 132 (E.D.N.Y. 2011) (holding government properly converted civil forfeiture proceeding into criminal forfeiture proceeding where property was originally seized pursuant to both civil and criminal forfeiture statutes and government obtained criminal indictment that included forfeiture allegations).

As one commentator notes,

If the government is already in lawful possession of property . . . ,

> it seems silly to have to go back to a magistrate or judge for a seizure warrant under § 853(f) to re-seize the same property, or to get a restraining order under § 853(e). Nevertheless, the requirement is plain, and is in fact repeated in [§] 983(a)(3)(C).

Cassella, 27 J. Legis. at 146-47 (internal footnote omitted). Thus, courts have found that where the government already has custody of property, as here, the government can discharge its obligation under § 983(a)(3)(B)(ii)(II) and preserve the property's availability for forfeiture by seeking a "house keeping order" under 21 U.S.C. § 853(e).[10] *See, e.g.*, *United States v. Scarmazzo*, No: 1:6-CR-342, 2007 WL 587183, *3 (E.D. Cal. Feb. 22, 2007); *United States v. Standridge*, No. 3:07-cr-90, 2007 WL 2572207, *2 (M.D. Fla. Sept. 5, 2007); *In re 2000 White Mercedes*, 220 F. Supp. 2d 1322, 1323-26 & n.5 (M.D. Fla. 2001); *see also United States v. Cosme*, 796 F.3d 226, 230 (2d Cir. 2015).

Furthermore, where the government already has custody of property, the government need not take any additional steps to preserve its right to maintain its custody where it (1) seized the property in the first instance with a multi-purpose warrant based on both the civil forfeiture authority in

---

[10] Pursuant to 21 U.S.C. § 853(e)(1), upon application of the government, the court may "take any . . . action to preserve the availability of property . . . for forfeiture under this section."

18 U.S.C. § 981(b) and the criminal forfeiture authority in 21 U.S.C. § 853(f) or (2) holds the property as evidence. *See* Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 17-2 (2d ed. 2013).

That is, property's evidentiary value may provide an independent basis for the government to maintain possession of it during the pendency of a criminal forfeiture proceeding. *See United States v. $3,294.00 in U.S. Currency*, No. 2:5-CV-998, 2006 WL 1982852, at *4-5 (D. Utah July 13, 2006) (holding evidentiary value of property seized and held as evidence by seizing agency provided an independent basis to maintain possession of the property that persisted until an appellate court affirmed claimant's conviction). This finding corresponds with the generally-accepted rule that a district court cannot order the return of property on a Fed. R. Crim. P. 41(g) motion when the government has a continuing need for the property as evidence. *See United States v. Gotti*, 244 F. Supp. 2d 120, 124 (E.D.N.Y. 2003) (citing *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999); *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991)). When the government properly maintains possession of property based on a valid evidentiary basis, it appears that no additional steps are necessary in order to satisfy 18 U.S.C. § 983(a)(3)(B)(ii)(II). *See*

*$3,294.00 in U.S. Currency*, 2006 WL 1982852, at *4-5. Nonetheless, if the government's continued possession of property is based only on its evidentiary value, the government must seek an alternative basis to maintain possession if and when that evidentiary value evaporates. *See United States v. Mann*, 140 F. Supp. 3d 513, 521, 534 (E.D.N.C. 2015) (holding once the government transferred seized currency to the Marshals Service, turned it into the form of a check, and deposited it, "the cash lost its evidentiary value and the government should have sought a protective order under 21 U.S.C. § 853(e)(1)(A) or a seizure warrant under 21 U.S.C. § 853(f) in order to continue to retain that money for forfeiture (rather than evidentiary) purposes"); *see also* Policy Manual: *Asset Forfeiture Policy Manual* (2016), Chap. 1, Sec. III.C.3, available at https://www.justice.gov/criminal-afmls/file/839521/download ("[I]f the evidentiary value of the property evaporates, the [g]overnment must obtain a seizure warrant or restraining order to maintain custody of the property for the purpose of forfeiture.") (internal footnote omitted); *Federal Procedure, Lawyer's Edition*, Chap. 22.IV, Sec. G.1.22:240 (Feb. 2019) ("The government is not permitted to seize private property and then simply retain that property without any demonstration that the property is

somehow necessary to an investigation even if seizure of the property was executed pursuant to a valid search warrant.").

In its response to Stegemann's motion, the government offers a grab-bag of scattered, and, at times, conflicting, arguments in an attempt to support its position that this civil forfeiture proceeding is not barred. (Dkt. No. 44 at 8-13.) First, there is no merit in the government's contention that "neither Section 983(a)(3)(B)(ii)(II) or 983(a)(3)(B) is applicable" because "[t]he property was seized by the government pursuant to a search . . . warrant and turnover orders." (Dkt. No. 44 at 12.) This argument seems to rely on the government's contention that the initial seizure of the defendant property satisfied the civil forfeiture seizure provisions of 18 U.S.C. § 981(b)(2)(B)(i). (*Id.*) However, even if the government's seizure of the defendant property satisfied 18 U.S.C. § 981(b)(2)(B)(i), the government still must comply with 18 U.S.C. § 983(a)(3)(B)(ii)(II) when it initially seizes property pursuant to 18 U.S.C. § 981 but instead pursues criminal forfeiture. *See Martin*, 460 F. Supp. 2d at 671, 675, 676 (holding, where government initially seized property pursuant to civil forfeiture statute but decided to pursue criminal forfeiture, "until the [g]overnment got the criminal seizure warrants, CAFRA required

13

the property's return, and no other warrant authorized its detention"); *see also Scarmazzo*, 2007 WL 587183, at *1-3; Cassella, § 17-2 at 598-99 ("If . . . the property was initially seized solely for civil forfeiture—*e.g.*, with a civil seizure warrant issued pursuant to 18 U.S.C. § 981(b), the [g]overnment commenced administrative forfeiture proceedings against the property, and someone filed a claim pursuant to [§] 982(a)(2), the [g]overnment's decision to pursue criminal forfeiture without filing a parallel civil forfeiture action triggers the requirement in [§] 983(a)(3)(B)(ii)(II) that the [g]overnment 'take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute.").

Equally as unconvincing is the government's argument that once it included the defendant property in the criminal indictment, "the civil forfeiture provisions no longer applied." (Dkt. No. 44 at 12, 13.) Indeed, if the government only pursued criminal forfeiture, the mandates of 18 U.S.C. § 983(a)(3) would be irrelevant. *Cf. Martin*, 460 F. Supp. 2d at 675. However, the government's argument misses the mark given that the government eventually decided to commence these civil forfeiture proceedings. In doing so, the government had to satisfy both

14

§ 983(a)(3)(B)(ii)(I) *and* (II); otherwise, it was barred from "tak[ing] any further action to effect the civil forfeiture of such property in connection with the underlying offense." 18 U.S.C. § 983(a)(3)(B).

Moreover, the government cites to only two cases, which fail to support these muddled arguments. (Dkt. No. 44 at 12.) The court in *United States v. Lindell*, CR NO. 13-512, 2016 WL 4707976, at *7-8 (D. Haw. Sept. 8, 2016), found that the government satisfied 18 U.S.C. § 983(a)(3)(B)(ii)(II) where property was seized pursuant to warrants issued under the civil *and* criminal forfeiture provisions. That is plainly not the case here. The only other case cited by the government, *United States v. Allen*, 5:00-CR-28, 2006 WL 1889978, *4 (M.D. Fla. July 10, 2006), is also not persuasive. In *Allen*, the court denied a defendant's motion for return of property pursuant to Fed. R. Crim. P. 41(g) where it found that the government's seizure of property satisfied 18 U.S.C. § 981(b)(2)(B)(I) (the civil forfeiture statute) and the government included the property within a criminal indictment. *See Allen*, 2006 WL 1889978 at *4. The court reasoned that, "[a]t that point, the civil forfeiture provisions no longer applied." *Id.* However, the *Allen* court did not squarely address 18 U.S.C. § 983(a)(3)(B)(ii)(II) because the motion was brought in the context of a

15

criminal forfeiture proceeding after the court entered orders of forfeiture and, it held, the defendant's window to file a Rule 41(g) motion was closed. *Id.* As such, the court was not faced with the question before this court: whether the government's failure to follow 18 U.S.C. § 983(a)(3)(B)(ii)(II) bars it from initiating a subsequent *civil* forfeiture proceeding.

In sum, neither of the cases cited by the government persuades the court that it should ignore the language of 18 U.S.C. § 983(a)(3)(B)(ii)(II). Were the court to adopt the position that all the government had to do to preserve its ability to file a subsequent civil forfeiture proceeding was name the defendant property in the criminal indictment within ninety days of Stegemann's claim, it would render § 983(a)(3)(B)(ii)(II) wholly superfluous. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (explaining that it is a "cardinal principle of statutory construction . . . that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (internal quotation marks and citations omitted); *see also Kramer*, 2006 WL 3545026, at *3 ("The [g]overnment's approach would render the words of 18 U.S.C. § 983 meaningless."). Moreover, were the court to adopt the government's position, CAFRA's procedural safeguards could be easily

circumvented, given that Supp. Rule G(3)(b) requires the court clerk to issue a warrant of arrest *in rem* for property in the government's possession without the need for any probable cause determination.  Under such circumstances, there would be no initial check on the government's continued possession of property, which is the very type of abuse that Congress sought to curb by enacting CAFRA.  *See Martin*, 460 F. Supp. 2d at 672 ("CAFRA comprised a series of reforms to strengthen the rights of the owners of seized property, including a deadline for the [g]overnment to act on claims made by an interested party in response to notice of an intended forfeiture.").  Instead, the government has an "obligation to give effect to the very clear and precise language of [18 U.S.C. § 983(a)(3)(B)] which authorizes no short cut seizure or continued retention of a citizen's property."  *Kramer*, 2006 WL 3545026, at *4.

Lastly, the government argues that it was unnecessary to take additional steps to hold the defendant property for the purpose of forfeiture because the defendant property was held for evidence in the criminal proceedings.  (Dkt. No. 44 at 9-11.)  However, the government fails to develop this argument.  That is, the government does not identify the evidentiary value of the defendant property or specify how long it persisted.

(*See generally id.*)  This is troublesome because a review of the record suggests that the evidentiary value of some or all of the defendant property expired prior to the initiation of this civil forfeiture proceeding.  That is, the evidentiary value of the currency seized from Stegemann's premises was arguably lost on May 1, 2013, when the sums were deposited into bank accounts.  (Dkt. No. 29 at 11, 13[11]); *see Mann*, 140 F. Supp. 3d at 521, 534.  This reasoning would obviously apply with equal weight to the currency seized from the safe at Stegemann's sister's residence.  However, it is unclear whether the agency responsible for seizing that currency followed the same protocol as the agency responsible for seizing the currency from Stegemann's premises.  (*Compare* Dkt. No. 184 at 191, 262-63, 1:13-cr-357, *with* Dkt. No. 185 at 363, 1:13-cr-357.)

Also tending to indicate the evaporation of the defendant property's evidentiary value, the SUV and the currency seized at Stegemann's premises have been in Marshals Service custody since May 23, 2013, (Dkt. Nos. 161, 162, 1:13-cr-357), and the currency seized from the safe has been in Marshals Service custody since at least September 2015,

_____

[11] These page numbers refer to the CM-ECF generated page numbers.

(Dkt. No. 171, 1:13-cr-357).  Although not dispositive, it is concerning that the government's policy manual indicates that "[t]he [Marshals Service] does not store property held as evidence, even when it is subject to forfeiture.  Such property is retained in the custody of the seizing agency until such time as it is no longer needed for evidence." *Asset Forfeiture Policy Manual*, Chap. 1, Sec. III.C.3.  Furthermore, the government's need to maintain possession of the defendant property for its evidentiary value throughout the duration of the criminal proceedings is difficult to discern, given that it only relied on pictures of the defendant property at trial.  (Dkt. No. 153 at 12, 17, 1:13-cr-357); *cf. United States v. Harvey*, 78 F. App'x 13, 15 (9th Cir. 2003) (holding that, in the context of a Rule 41(g) motion, the government failed to demonstrate a continuing interest to retain seized property where its basis for possessing it could be readily satisfied by other means, such as through photocopies or photographs).

That all having been said, the court understands that it is easy to play Monday morning quarterback, and that evidentiary value is not always readily apparent from the sidelines.  To be sure, if the evidentiary value of the defendant property expired, the government was required to seek an additional avenue to maintain custody of the defendant property pursuant

to the applicable criminal forfeiture statute.  *See Mann*, 140 F. Supp. 3d at 534.  Because the court finds that the government did not do this, the absence of evidentiary value would bar these civil forfeiture proceedings.  *See* 18 U.S.C. § 983(a)(3)(B)(ii)(II).  However, further clarity from the government regarding any evidentiary value of the defendant property is necessary.  As such, the government is directed to file a supplemental response within ten days identifying any specific evidentiary value of the defendant property and addressing how long this evidentiary value provided an independent basis for its continued possession of the defendant property based on the above analysis.  In the alternative, the government should notify the court of its intent to abandon this action.[12]

_____

[12] The government alternatively asks the court to stay its decision on Stegemann's motion in order to allow it to obtain an order under 21 U.S.C. §§ 853(e) or (f).  (Dkt. No. 44 at 13 n.5.)  Although a grand jury's probable cause determination may serve as a basis for issuing an order under 21 U.S.C. § 853, *see United States v. Lewis*, Crim. No. 4-403, 2006 WL 1579855, at *3 (D. Minn. June 1, 2006), it is undisputed that the government did not apply for such an order.  Courts have allowed the government to cure its failure to initially seek a required order under 21 U.S.C. § 853 in the criminal forfeiture context only because, unlike CAFRA, the criminal forfeiture statutes do not include time limits.  *See Kramer*, 2006 WL 3545026, at *4; *Martin*, 460 F. Supp. 2d at 675-76.  However, the government cannot cure its failure to seek an independent basis to preserve its right to maintain custody of the defendant property within ninety days of Stegemann's claims.  *See* 18 U.S.C. § 983(a)(3)(B).  Moreover, the court cannot fathom how it could retroactively grant any

Accordingly, for the foregoing reasons, it is hereby

**ORDERED** that claimant's motion to dismiss (Dkt. No. 33) is **DENIED WITH LEAVE TO RENEW** as follows:

if the government does not file a supplemental response within ten (10) days, the court will consider Stegemann's motion (Dkt. No. 33) automatically renewed, and it is **GRANTED**, insofar as it seeks dismissal of the complaint *in rem* and return of the defendant property based on the government's failure to satisfy 18 U.S.C. § 983(a)(3)(B)(ii)(II), and the amended complaint (Dkt. No. 32) is **DISMISSED**; but, if the government files a supplemental brief within the applicable time period, the court will consider Stegemann's motion (Dkt. No. 33) automatically renewed, insofar as it seeks dismissal of the complaint *in rem* and return of the defendant property based on the government's failure to satisfy 18 U.S.C. § 983(a)(3)(B)(ii)(II), and Stegemann may file a reply brief within ten (10) days of the date that the government files its supplemental brief;

---

order in the criminal case allowing for continued possession of the defendant property in light of the government's concession on appeal and the Second Circuit's decision. As such, the government's impractical request for a stay is denied.

and it is further

**ORDERED** that all supplemental briefs filed pursuant to this order

shall not exceed ten (10) pages in length; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to

the parties.

**IT IS SO ORDERED.**

March 15, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge